

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

**LORD VERSATILE,**

    Plaintiff,

v.                                                                                     Civil Action No. **3:09cv120**

**GENE JOHNSON,** *et al.*,

    Defendants.

## MEMORANDUM OPINION

Plaintiff, a Virginia inmate proceeding *pro se*, filed this action alleging that Defendants Johnson, Jabe, Wright, Jennings, Kelly, and Robinson[1] violated his rights to practice his religion. Specifically, Plaintiff contends:

    Claim One    Defendants Johnson, Jabe, Wright, and Jennings violated Plaintiff's rights under the Religious Land Use and Institutionalized Person's Act[2] by imposing a "blanket ban" on publications relating to the Nation of Gods and Earths ("NGE"), including the newsletter "the Five Percenter." (Compl. ¶ 11.)[3]

    Claim Two    Defendants Vaughn and Washington violated Plaintiff's rights under RLUIPA when they failed to comply with VDOC regulations requiring them to process Plaintiff's request that the Nation be recognized as a religion at Sussex I.

---

[1] Gene Johnson is the Director of the Virginia Department of Corrections ("VDOC"). John Jabe is the Deputy Director of Operations for the VDOC. Benjamin A. Wright is the Chairman of the VDOC Publication Review Board. W.D. Jennings is described as the formal Chairman of the VDOC Publication Review Board. Loretta Kelly is the Warden of Sussex I State Prison ("Sussex I"). A. David Robinson is the Regional Director of the VDOC.

[2] 42 U.S.C. § 2000cc-1(a)(1)-(2) (hereinafter "RLUIPA").

[3] The Court has corrected any capitalization errors in the parties' filings.

Plaintiff demands injunctive relief and monetary damages. Defendants have moved for summary judgment. Plaintiff has responded, and has filed his own motion for summary judgment.[4] The motions for summary judgment are ripe for disposition. This matter is also before the Court on Plaintiff's motion to compel discovery and on Defendant's motion for a protective order.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (*quoting* former Fed. R. Civ. P. 56(c) and 56(e) (1986)). In reviewing a summary judgment motion, the court "must draw all

---

[4] Plaintiff refers in his motion for summary judgment to the VDOC's general denial of opportunities for NGE members to engage in religious practices including observance of holy days. Plaintiff's complaint, however, seeks relief from Defendants only insofar as they are responsible for implementing a blanket ban on NGE literature. (Compl. ¶¶ 11-12.) Any other grounds for relief asserted in the motion for summary judgment are not properly before the Court and will not be considered.

2

justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Nevertheless, the nonmoving party cannot "'create a genuine issue of material fact through mere speculation or the building of one inference upon another.'" *Emmett v. Johnson*, 532 F.3d 291, 296 (4th Cir. 2008) (*quoting Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985)).

Affidavits submitted in support of a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). Rule 56(e) "limits the matter to be properly included in an affidavit to facts, and the facts introduced must be alleged on personal knowledge. Thus, ultimate or conclusory facts . . . as well as statements made on belief or 'on information and belief,' cannot be utilized on a summary-judgment motion." 10B Wright, Miller, & Kane, *Federal Practice and Procedure* § 2738 (3d ed. 2009). A summary judgment affidavit must affirmatively show that "the statements therein were made on personal knowledge and based on facts in regard to which the affiant is competent to testify." *Jackson v. United Airlines*, No. 3:08cv182, 2009 WL 1036068, at *3 (E.D. Va. Apr. 17, 2009) (*citing Antonio v. Barnes*, 464 F.2d 584, 585 (4th Cir. 1972)). To the extent an affiant relies on documentary evidence, "a sworn or certified copy [of the paper referred to] must be attached to or served with the affidavit." Fed. R. Civ. P. 56(e)(1).

In support of their motion for summary judgment, Defendants have tendered an affidavit from Gary Clore, Manager of the VDOC Gang Management Unit. Clore's affidavit fails to set forth, as it must, the facts upon which Clore's assertion rely. For example, Clore explains that the VDOC does not consider the NGE a religion because:

> This gang has been disruptive in nature to the safe, secure, and orderly operation of our facilities on more than one occasion.
>
> This gang consistently recruits other gang members (i.e. Bloods, Crips, etc.) to join their gang.
>
> While this gang claims to worship Allah, the VDOC has evidence to show that Allah is a disguise meant to mislead outsiders. Allah does not identify a supreme being, this gang identifies Allah as: Arm, Leg, Leg, Arm, Head. Therefore, they describe Allah as being the "enlightened" black man who is in fact a god.
>
> This gang is a separatist hate group. They stress black supremacy throughout their lessons.

(Deft.'s Mot. Supp. Summ. J., Clore Aff., ¶ 8). Clore's affidavit does not show that he has personal knowledge of any facts justifying his assertions. Clore also asserts that the VDOC is in possession of evidence supporting its positions. Defendants have failed, however, to submit any such evidence for consideration. Because Clore's affidavit does not comply with Rule 56(e)(1) of the Federal Rules of Civil Procedure, the Court will not consider it.

In opposition to Defendants' motion for summary judgment, and in support of his own, Plaintiff has submitted affidavits, copies of departmental operating procedures ("DOPs"), and copies of correspondence and grievances, as well as his sworn complaint. In light of the foregoing principles and submissions, the facts set forth below are presumed true for purposes of the motions for summary judgment.

## II. SUMMARY OF PERTINENT FACTS

Plaintiff is a member of the Nation of Gods and Earths. Plaintiff became a member of the NGE on January 27, 1987. As a member of the NGE, he is required to study the Supreme Mathematics, the Supreme Alphabets, 120 Degrees, and the NGE's national newspaper, the Five Percenter. Plaintiff has been a subscriber to the Five Percenter since 1997.

Since 1996, the VDOC has classified the NGE as a Security Threat Group ("STG") or gang rather than a religion. In August of 2006, the VDOC imposed a blanket ban on the NGE's national newspaper, the Five Percenter. The record does not disclose the reason for the timing of the VDOC's ban. The VDOC also prohibits possession of some of the other literature that members of the NGE must study in the exercise of their religious beliefs.

A.  **Plaintiff's Evidence That Defendants' Security Concerns Are Exaggerated, and that the Nation of Gods and Earths is a Religion**

Plaintiff denies that the NGE is a hate group. He avers that the NGE does not recruit anyone, including gang members. (Pl.'s Resp. Defs.' Mot. Summ. J., Ex. E., ¶ 7.) Plaintiff avers that the NGE "encourages all Nation members . . . to get an education while in prison and to learn vocational trades, learn to be responsible for one's own actions . . . and to comply with prison rules so that they can return to society as soon as possible and live a righteous and productive way of life." (Pl.'s Resp. Defs.' Mot. Summ. J., Ex. E., ¶ 11.) The NGE does not retaliate against members who decide to leave.

Plaintiff describes the NGE as a "legitimate God centered cultural nation." (Pl.'s Resp. Defs.' Mot. Summ. J., Ex. E., ¶ 6.) Plaintiff's personal view is that "the term religion is synonymous with a way of life a person lives . . . or one's cultural pathway to God." (Pl.'s Resp. Defs.' Mot. Summ. J., Ex. E., ¶ 3.) Plaintiff explains that the NGE is technically a religion, but that its adherents eschew that term because it connotes belief in a mystery God. Nevertheless, the NGE teaches "the truth of God and the devil as we know it." (Pl.'s Resp. Defs.' Mot. Summ. J., Ex. E., ¶ 6.) He denies that its practices involve the use of secret codes.

## B. Plaintiff's Application for Recognition of the Nation of Gods and Earths as a Religion by VDOC

Requests for new religious programs or groups are governed by Department Operating Procedure ("DOP") 841.3, which provides as follows:

> C. Establishment of New Religious Programs
> 1. Offender requests for new religious groups or activities not previously or currently offered at a facility shall be submitted [on the proper form] to the Facility Unit Head or designee who shall be a DOC employee. Each request shall be as complete and well documented as possible.
> 2. The Facility Unit Head shall review the *Request for Recognition of Religious Group* and, if complete, attach a *Routing Slip for Recognition of Religious Groups* . . . indicating recommendation to approve or disapprove the [Request].
> 3. The Facility Unit Head will refer the request and supporting documentation through the Regional Director (Assistant Director for Community Corrections Facilities) to the *Faith Review Committee* for recommendation to the Deputy Director.
> 4. The Deputy Director shall make the final decision as to whether a proposed religious group will meet based on information presented.

(Pl.'s Br. Supp. Mot. Summ. J. Ex. B., at 4 (italics in original).)

On December 4, 2007, Plaintiff submitted a request that the NGE be recognized as a religion pursuant to DOP 841.3(c). On February 3, 2008, the Chaplain at Sussex I responded that "according to [VDOC] policy, the Nation of Gods and Earths is not among those religions listed as recognized by the [VDOC]." (Pl.'s Br. Supp. Mot. Summ. J. Ex. C, Enc. 2.)

On February 12, 2008, Plaintiff filed a grievance complaining that his request had not been processed according to VDOC 841.3(C). On March 4, 2008, Defendant Kelly responded that, although regulations allowed Plaintiff to request recognition of a religion, "per the Faith Review Committee docket for October 2007; The Nation of Gods and Earths is not a recognized

6

religion by the Virginia Department of Corrections." (Pl.'s Br. Supp. Mot. Summ. J. Ex. C, Enc. 3, at 3.) Plaintiff appealed. On April 4, 2008, Defendant Robinson determined that Plaintiff's grievance was unfounded.

## III. ANALYSIS

### A. Merits of Plaintiff's RLUIPA Claims on Summary Judgment

RLUIPA provides considerably more protection for an inmate's religious exercise than does the First Amendment. *See Lovelace v. Lee*, 472 F.3d 174, 186 (4th Cir. 2006). RLUIPA prohibits prisons from imposing a substantial burden on an inmate's religious exercise unless prison officials can demonstrate that the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2). Furthermore, "'religious exercise' includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). A plaintiff bears the initial burden of showing (1) that he seeks to engage in an exercise of religion and (2) that the challenged practice substantially burdens that exercise. 42 U.S.C. § 2000cc-2(b). Once a plaintiff establishes a prima facie case, the defendants bear the burden of persuasion on whether their practice is the least restrictive means of furthering a compelling governmental interest. *Lovelace*, 472 F.3d at 185 (*citing* 42 U.S.C. § 2000cc-1(a)).

Defendants argue that the NGE is not a religion. In support of this argument, Defendants merely cite to a single case for the proposition that "[t]his Court has recently found that the Five Percenters' beliefs are not religious in nature and therefore not deserving of protection under RLUIPA. *Harrison v. Watts*, 609 F. Supp. 2d 561 [(E.D. Va. 2009)]." (Defs.' Mem. Supp. Mot.

Summ. J. 4-5.) The plaintiff in *Harrison*, however, "ha[d] been quite candid and forthright from the outset [including the administrative grievance process] that he d[id] not consider his beliefs to be religiously motivated, but instead to comprise a 'way of life' or 'culture' that impel him to act in certain manners." 609 F. Supp. 2d at 572-73. Accordingly, the Court ruled in the cited opinion that Plaintiff's attempt to amend his complaint to state that the NGE was a religion was futile, both because this claim was not properly exhausted and because of the implausibility that Plaintiff sincerely believed that the NGE was a religion. *Id.* This Court has made no blanket ruling that the teachings of the NGE can never be a considered a religion, and Defendants have made no attempt to apply the relevant law to undisputed facts of this case for summary judgment purposes. Moreover, Plaintiff maintains that the NGE is at least technically a religion. Defendants have failed to demonstrate the absence of any genuine issue of material fact as to whether the Nation is a religion for the purposes of RLUIPA.

Defendants next contend that Plaintiff has not shown that any substantial burden to the exercise of his beliefs. They first point out that "Plaintiff does not allege that the STG classification has prevented him from participating in any of his Five Percenters practices such as praying, fasting or taking part in the other aspects of his alleged religion." (Defs.' Mem. Supp. Mot. Summ. J. 5.) Defendants' assertion is false. (*See* Compl. ¶¶ 7-9.) Additionally, Defendants' assertion is irrelevant. *See Al-Amin v. Shear*, 325 F. App'x 190, 193 (4th Cir. 2009) (No. 08-7681) (noting that district court's conclusion that inmate had alternative ways to practice his religion was not relevant under RLUIPA), *available at* 2009 WL 971454, at *1. Plaintiff's claim that he was burdened in his required "study [of] the Supreme Mathematics, Supreme Alphabets, 120 Degrees, Universal Flag of Allah, Monthly National Statements, and Newspaper

8

Periodicals" is sufficient. (Compl. ¶ 7.) Defendants cite to similarly irrelevant cases involving *constitutional* claims for the proposition that "[c]ourts have consistently affirmed the confiscation of written materials." (Defs.' Mem. Supp. Mot. Summ. J. 5-6 (*citing Harbin-Bey v. Rutter*, 420 F.3d 571 (6th Cir. 2005) (affirming dismissal of constitutional claims); *Fraise v. Terhune*, 283 F.3d 506, 519 (3d Cir. 2002) (same); *Cartwright v. Meade*, No. 7:08cv00250, 2008 WL 2944668 (W.D. Va. July 31, 2008) (denying First Amendment challenge to confiscation of Five Percenter materials)).) Defendants cannot establish entitlement to judgment without applying RLUIPA, which governs the claims Plaintiff actually raised. They have thus failed to demonstrate a genuine absence of material fact as to whether their policies have imposed a substantial burden on Plaintiff's exercise of religion under RLUIPA.

Defendants next argue that Plaintiff's RLUIPA claim must be dismissed because they have demonstrated a compelling governmental interest in security and the ban on books and periodicals relating to the NGE is the least restrictive means available to further that interest. In assessing those arguments, "due deference must be given 'to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'" *Smith v. Ozmint*, 578 F.3d 246, 252 (4th Cir. 2009) (*quoting Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005)). In this regard, the Supreme Court has admonished that the security concerns of prison officials "deserve 'particular sensitivity.'" *Id.* (*quoting Cutter*, 544 U.S. at 722). Nevertheless, as discussed below, Defendants fail to adequately demonstrate that they have chosen the least restrictive means to further a compelling interest.

"To meet its burden to show a compelling interest, [Defendants'] 'first job' is 'to take the unremarkable step of providing an explanation for the policy's restrictions that takes into account any institutional need to maintain good order, security, and discipline or to control costs.'" *Id.* (*quoting Lovelace*, 472 F.3d at 190). Generally, "[p]rison safety and security are compelling government interests." *Singson v. Norris*, 553 F.3d 660, 662 (8th Cir. 2009) (*citing Fegans v. Norris*, 537 F.3d 897, 906 (8th Cir. 2008)). Nevertheless, "[e]ven in light of the substantial deference given to prison authorities, the mere assertion of security . . . is not, by itself, enough for the Government to satisfy the compelling governmental interest requirement." *Washington v. Klem*, 497 F.3d 272, 283 (3d Cir. 2007). Rather, prison officials must supply adequate record evidence that the particular security concerns that prompted the policy are compelling and are advanced by their policy. *See Smith*, 578 F.3d at 252 (concluding prison officials failed to provide adequate evidentiary support for their assertion that their security concerns constituted a compelling governmental interest); *Lovelace*, 472 F.3d at 190-91 (same).

Here, Defendants contend that literature related to the NGE compromises institutional security. Defendants' evidence consists solely of Gary Clore's conclusory allegation that the NGE is a racist group, that members of the NGE have been disruptive, and that the banned materials contain gang-related material because the VDOC defines the NGE as a gang. (Clore's Aff. ¶¶ 8-10.) As discussed above, Clore's affidavit is not proper summary judgment evidence. Even if it were, however, the Court would deny summary judgment because Defendants did not provide evidence of even a single instance of an inmate using NGE materials for any subversive activities at Sussex I or any other VDOC institution. *See Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 989 (8th Cir. 2004) ("The threat of racial violence is of course a valid security concern, but

to satisfy RLUIPA's higher standard of review, prison authorities must provide some basis for their concern that racial violence will result from any accommodation of [an inmate's] request." (*citing Ochs v. Thalacker*, 90 F.3d 293, 296-97 (8th Cir. 1996))). Thus, Defendants have failed to demonstrate that no material questions of fact exist as to whether the blanket ban on NGE-related materials furthers a compelling state interest.

Even if one were to assume that the threat to prison security from the presence of NGE-related material constitutes a compelling interest, Defendants fail to demonstrate that they have employed the least restrictive means to address that concern. "In other strict scrutiny contexts, the Supreme Court has suggested that the Government must consider and reject other means before it can conclude that the policy chosen is the least restrictive means." *Washington*, 497 F.3d at 284 (*citing Warsoldier v. Woodford*, 418 F.3d 989, 999 (9th Cir. 2005) (*in turn citing United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 824 (2000); *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 507 (1989))). Thus, in order to carry their burden with respect to summary judgment, prison officials generally must demonstrate they considered and rejected the efficacy of less restrictive measures before adopting the challenged practice. *Id.*; *Spratt v. R.I. Dep't of Corr.*, 482 F.3d 33, 41 (1st Cir. 2007); *Murphy*, 372 F.3d at 989; *see also Smith*, 578 F.3d at 254 (vacating grant of summary judgment where prison officials failed to demonstrate why forcible shaving, rather than some lesser restriction, was necessary to enforce grooming policy). Nor have Defendants directed the Court to any case where a court concluded that a blanket ban on all religious literature was the least restrictive means of furthering security interests similar to those they advance here. Accordingly, they have failed to demonstrate entitlement to summary judgment.

Defendants move for summary judgment on Claim Two on the grounds that Plaintiff has not identified which actions violated VDOC regulations, and because violating VDOC procedures does not form the basis for any violation of federal law. Plaintiff has identified as the factual basis for Claim Two the failure of Defendants Kelly and Robinson to process Plaintiff's request for official recognition of the NGE as a religion. Plaintiff's claim does not appear to rest solely on a technical violation of VDOC regulations. Summary judgment is inappropriate given the failure of the Defendants to address the factual basis of Claim Two.

Plaintiff has also filed a motion for summary judgment. Plaintiff contends that the VDOC incorrectly classified the NGE as a gang. Plaintiff reasons that the VDOC's regulations are therefore impermissible under RLUIPA. As discussed above, RLUIPA does not prohibit restrictions on the exercise of a religious belief if the restriction is the least restrictive means of furthering a compelling state interest. Plaintiff fails to address the issue of whether the VDOC's policies are permissible under RLUIPA, much less demonstrate the absence of any material fact. Plaintiff's motion for summary judgment will be DENIED.

## B.    Qualified Immunity

Defendants also assert entitlement to qualified immunity. If Defendants wish the Court to further evaluate their defense of qualified immunity, they must do more than mention its existence and demand dismissal of the suit. They must: (1) identify the specific right allegedly violated; (2) brief, with full pinpoint citation to authority, whether the right was so clearly established as to put a reasonable official on notice of his legal obligations; and (3) describe to the Court the factual scenario supporting the assertion that a reasonable official in Defendant's

situation would have believed his conduct was lawful.[5] *See Collinson v. Gott*, 895 F.2d 994, 998 (4th Cir. 1990); *see also Henry v. Purnell*, 501 F.3d 374, 378 (4th Cir. 2007) (holding that defendants bear the burden of showing that conduct was objectively reasonable) (citations omitted).

C. **Immunity from Suit for Damages**

The Eleventh Amendment bars suits for damages against Defendants in their official capacities. *See Madison v. Virginia*, 474 F.3d 118, 133 (4th Cir. 2006) (explaining that a plaintiff in a RLUIPA suit may not obtain damages from a state official acting in his official capacity). Although Defendants have not advanced this point in their motion for summary judgment, Plaintiff may not obtain damages from Defendants in their individual capacities either. *Rendelman v. Rouse*, 569 F.3d 182, 189 (4th Cir. 2009) (dismissing claims for damages against defendants in their individual capacities where, as here, plaintiff invoked jurisdiction based only on receipt of federal funds). Plaintiff's claims for damages against Defendants will be DISMISSED.

## IV. DISCOVERY MOTIONS

Plaintiff has filed a motion to compel answers to interrogatories and production of documents. Defendants have filed a motion for a protective order. The parties have failed to include, as they must, a certification that they have conferred in a good faith attempt to resolve

---

[5] Defendants contend only that, as observed in *Harrison*, no mandatory precedent holds that the NGE is a religion. *See* 609 F. Supp. 2d at 575. It is well settled, however, that "the absence of controlling authority holding identical conduct unlawful does not guarantee qualified immunity." *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 279 (4th Cir. 2004) (*citing Wilson v. Kittoe*, 337 F.3d 392, 403 (4th Cir. 2003)). Defendants have failed to address whether the right allegedly violated is "'included within more general applications of the core constitutional principle invoked.'" *Id.* (*quoting Amaechi v. West*, 237 F.3d 356, 363 (4th Cir. 2001)).

the dispute without Court action. *See* Fed. R. Civ. P. 26(c)(1); Fed. R. Civ. P. 37(a)(1). Accordingly, both motions will be DENIED WITHOUT PREJUDICE.

Plaintiff has not demanded a jury trial. Accordingly, this matter will be referred to the Honorable M. Hannah Lauck, United States Magistrate Judge, for further proceedings, including an evidentiary hearing if necessary. An appropriate Order shall issue.

/s/
Richard L. Williams
United States District Judge

Dated: DEC 3 1 2009
Richmond, Virginia